# In the Court of Quarter Sessions of Schuylkill County.

## IN THE MATTER OF THE REPORT OF VIEWERS APPOINTED TO WIDEN NORWEGIAN STREET IN THE BOROUGH OF POTTSVILLE.

1. The Court of Quarter Sessions of Schuylkill county has jurisdiction to lay out streets and roads in the borough of Pottsville.

2. When the first day of the term of said court fell on Monday, 1st June, it was held that a report of viewers opening a street, filed on 22d June, was in time.

3. After the width of a road is fixed by the court, one term should intervene before the report is confirmed, to allow time to file exceptions, or ask for a review.

**Exception to the confirmation of the Report.**

Opinion delivered March 22, 1875, by

WALKER, J.    The exceptions to the confirmation of this report, are :

1st.  The petition was not presented to the town council for approval.

2d.  The court of Quarter Sessions has no jurisdiction to appoint viewers to lay out streets in the borough of Pottsville.

3d.  That the viewers failed to report to the next term of the court as required by law.

4th.  The court failed to fix the width of the proposed road at the time of confirming the report nisi.

1st.  As to the first exception.  The act of 2 April, 1872. (Pamp. Laws, p 723), requires the petition for viewers to be first presented to the town council for their approval.

Whether this was done, does not appear in evidence.  But the record shows that notice of the time and place of the meeting of the viewers was served more than ten days previous upon the town council, supervisor, town clerk and auditors of the borough, and accepted in writing by them.

Their acceptance of the notice may be considered as a waiver of their privilege to approve first of the petition ; especially as they appear before us through their solicitor, and ask for the confirmation of the report.

This objection therefore does not lay in the mouth of a stranger to make.

2nd.  As to the jurisdiction of the quarter sessions to lay out roads in the borough.

The 1st section of the act of 13 June, 1836, (Pur. Dig. 1272, Pl. 1. Pamp. Laws, 1836, p. 555) confers upon the Court of Quarter Sessions of every county in the State, the authority upon petition to grant a view for a road in the respective county for the purpose of laying it out. The power is universal within the limits of the county, and extends as well to incorporated towns as to rural districts, 8 C. 361 ; 2 Brew. 599.

The borough charter contains nothing inconsistent with this act, so as to exclude the jurisdiction of this court.

The act of 22 April, 1856, (P. L. 509,) confers upon the town council of the borough of Pottsville, authority to lay *out, open, widen and straighten* streets, lanes and alleys, but does not repeal the jurisdiction of the Quarter Sessions, and the act of the 2 April, 1872, (P. L. p. 723,) clearly recognizes this authority.

In the matter of Callowhill St., 8 C. 361, it is decided that the Court of Quarter Sessions has jurisdiction to lay out and open new streets in Pottsville, unless clearly excluded by the provisions of the charter.

See also borough of Mercer case, 14 S. & R., 447 ; Sharett's road, 8 Barr. 89 ; Newville Road Case, 8 Watts, 172.

In the Easton Road Case the jurisdiction of the Quarter Sessions was expressly excluded.    3 Rawle 195.

Under these authorities we see nothing in this exception.

3d. As to the third exception.    The record shows that on 4 May, 1874, the viewers were appointed and that they presented their report to the Court on 22 June, 1874.

The act of 1836, requires them to report *at the next term of the Court of Quarter Sessions.*

When this is not done (and there is no continuance), the report is irregular and void.    Chartiers Tp. Road, 12 Wr. 314.

And the filing of the report in the clerk's office is not reporting. Baldwin and St. Clair Road, 12 C. 9.    It must be presented to and approved by the court.    Gibson & Guy's Mile Road, 1 Wr. 255.

The material question here is.    *Was this report presented to, and approved by the court, at the next term ?*

The act of 5 April, 1849, (P. L. 368, Sec. 4), provides that the respective courts shall be held in the county of Schuylkill on the first Mondays in March, June, September and December, *four weeks.*

This fixes the respective terms of the Common Pleas.    Horton & Heil vs. Miller, 2 Wr. 270.

The act of 13 April, 1855, (P. L. p. 374), provides that the Courts of General Quarter Sessions of the Peace, and the Courts of Oyer and Terminer and General Jail Delivery, holden in the county of Schuylkill,

shall commence on the first Monday of the several terms of the courts for said county, *to continue three weeks*, if necessary, &c.

Under this act it is evident that the next Court of Quarter Sessions, (after the appointment of viewers in this case, and to which their report was to be made), commenced on Monday, first June, 1874.

Under our rule of court four weeks are allowed to file reports of viewers, and although no rule of court can be enforced contrary to an act of Assembly, yet the rule must be regarded as a special order of continuance in each respective case. For under the act of 1834, (P. Dig. 1199, Pl. 7 and 8), the Judges may hold special and adjourned quarter sessions, as often as occasion shall require.

Had there been a motion to continue the order the matter would have been free from doubt and beyond controversy.

It is admitted that a general order of court fixing the width of roads cannot be made. 1 Barr 356 ; 4 Barr 337.

For all roads cannot be laid out and made of the same breadth. Location and travel must determine that, and therefore it becomes a matter of judgment and discretion. Shaefferstown Road, 5 Barr 515.

Also notice to the landowners of the extent of their ground taken is important. We therefore think that a general order may be made for holding special and adjourned courts for road cases.

But the act of 1855 provides that the Court of Quarter Sessions shall be held three weeks if necessary.

If this term means three full and entire weeks, or 21 days, then the last day would fall on the 22d of June, the very day upon which this report was presented to, and approved of, by the court.

To ascertain this we must resort to the rule adopted by the Supreme Court for the computation of time.

There is a distinction between the English and Pennsylvania mode of computation of time. The former have placed upon it a strict construction, while the current of our authorities is to give it a liberal one.

In Sims v. Hampton, 1 S. & R. 411, it was held in computing the 20 days allowed for an appeal from the award of arbitrators the day on which the appeal is entered is *excluded*.

The same principle has been decided in Browne v. Browne, 3 S. & R. 496.

In Goswiler's Estate, 3 Pa. Rep. 201, the court decided that *when a rule of court* or an *act of Assembly* gives a number of days to do some act, and the *last* day fall on a Sunday, it may be done the next day. This is affirmed in Duffy v. Ogden, 14 P. F. S., 240. So under the act of 26 March, 1827, the *five* years from the day of the entry of the judgment (within which it must be revived by *scire facias*) are exclusive of the day

on which the judgment was entered. Green's appeal, 6 W. & S. 327. See also Lysle v. Williams, 15 S. & R. 135.

So also under the act regulating distress for rent, and the right of the tenants to replevy the same, in computing the time in which the tenant may replevy, the day upon which the distress is made is excluded, and if the 5th day be *Sunday,* the following Monday will be estimated as the fifth day. McKinney v. Reader, 6 Watts, 37; Brisben v. Wilson, 10 P. F. S. 452.

In an award in replevin where the 20th day falls on a Sunday it was held that the appeal was properly taken the next day. Harker v. Addis, 4 Barr, 515. *Sunday is not a judicial day.*

In Gass v. The Schuylkill Iron Company, 2 Foster, 241, this court held in calculating the *thirty* days allowed by law to enter bail, for a stay of execution that the day on which the judgment is entered is excluded.

In Cromlien v. Brink, 5 Casey, 525, Judge Porter reviews the whole question of *time,* applying the same rule when 2 years are given to redeem land, as when days are mentioned in the statutes.

This decision, therefore, is most important, as there is no good reason why the rule should be different when weeks are mentioned in a statute, or rule of court.

This last decision is affirmed in Marks v. Russel, 4 Wright, 372, where it is held that in computing the time to plead on ten days' notice, the day on which the notice is given must be excluded, and if the last day fall on Sunday, that is also excluded.

In Menges et al. v. Frick 23 P. F. S. 140 it is held that when suit is brought within six years after the day on which the cause of action arose, that day is to be excluded from the computation.

And in there also said "that when a thing is to be done within *a certain time* from a prior date, and the party is deprived of a right by its omission, the day from which the count is to be made is excluded from the computation." If it be said that the act of 1855 only requires the Quarter Sessions to be held three weeks if *necessary,* and in a case where the court only sat two weeks and three days, and then adjourned, a report of viewers filed next day would be too late, although the three weeks had not expired. This is no doubt true.

But in this case the record shows that the Court of Quarter Sessions commenced on first June, and continued in session every day except Sundays, up to Saturday 20 June, when it adjourned over to Monday, the 22d June.

In Spring Brook Road, 14 P. F. S. 453, Judge Sharswood says the term expired on Saturday, and he also says that it is not unusual to hold an

adjourned session on the Monday succeeding the term in order to wind up business.    This was literally true in this case.

If this was not strictly an adjourned court it was an enlargement of the term for road purposes.

.    4th. The remaining exception is that the width of the street was not fixed by the court.

This is an irregularity which will prevent the final confirmation of the report unless another term (after the width is directed), be given to file exceptions or ask for a review.

This report cannot now be confirmed, for it would be error, and if removed into the Supreme Court, that court would remand the record to us to fix the width, and allow time until the next term to file exceptions or ask for a review.  Clowes' Road, 2 Grant, 129 ; Charleston Road, 2 Grant, 467 ; Road in Pitt township, 1 Barr., 356 ; Road in Whitemarsh, 5 Barr. 101.

The exceptions are therefore overruled, and the following order is made :

And now March 22, 1875, the exceptions filed in this case are overruled and the court direct the breadth of Norwegian street to be 37 feet six inches from 6th to 12th street in the borough of Pottsville, and approve of the same, and the assessment of the damages.    And the court do further order and direct that these proceedings be not entered of record, nor the street, (of the width aforesaid), be taken, deemed or allowed to be a public highway, until the next term of the court hereafter in order to allow time to any one aggrieved  to file exceptions to the confirmation of this report, or to ask for a review under the provisions of the Acts of Assembly relative thereto.